The Honorable Theresa L. Fricke

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

LEVI FRANK GRAHAM,

Defendant.

NO. CR25-5166-DGE-19

UNITED STATES' RESPONSE TO
DEFENDANT' MOTION FOR
PRETRIAL RELEASE
(DKT. 268)

## I.    INTRODUCTION AND BACKGROUND

Defendant Levi Graham was charged in a First Superseding Indictment on September 3, 2025, with Conspiracy to Distribute Controlled Substances and Possession of a Controlled Substance with Intent to Distribute. (Dkt. 121.) Graham was arrested the same day and made his initial appearance on September 4, 2025. (Dkt. 151, 169.) An initial detention hearing was held on September 9, 2025, Graham stipulated to detention, and he was ordered detained. (Dkt. 176, 178.)

On November 3, 2025, through former counsel, Graham moved for a renewed detention hearing on the basis that he had secured an inpatient bed date at ABHS for substance abuse treatment. (Dkt. 215.) The United States filed a response opposing release. (Dkt. 220.) Graham's former counsel subsequently withdrew from representation

Response to Motion for Pretrial Release - 1
*United States v. Graham* / CR25-5166-DGE-19

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and the pending motion was terminated to allow current counsel to gather additional information. (Dkt. entries dated 3/11/26 and 3/26/26.)

Graham filed the instant motion on April 14, 2026.[1] (Dkt. 268.) In his motion, Graham again argues for his release on the basis that he has secured an inpatient bed date with ABHS.

The United States opposes Graham's release. As with his initial motion for a renewed detention hearing, defendant has failed to meet the burden of reopening the detention hearing by presenting information that was not known to the defendant at the time of the initial hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure his appearance as required and the safety of the community. Nor has he rebutted the statutory presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of any other person and the community.

## II.    BACKGROUND OF THE INVESTIGATION

In September of 2022, the DEA began conducting a criminal investigation of a Mexican Drug Trafficking Organization (DTO) operating out of Tacoma, Washington, with ties to Nevada, Oregon, and California, and responsible for distributing fentanyl, methamphetamine, cocaine, and other drugs in the Western District of Washington and elsewhere. As the investigation progressed, investigators identified two brothers, Rosario and Francisco Camargo Banuelos, as leaders of the DTO who coordinated drug trafficking taking place in the Western District of Washington and elsewhere. The DTO is referred to herein as the Camargo Banuelos DTO.

In June 2024, Graham was intercepted ordering fentanyl from co-defendant and DTO leader Francisco Camargo Banuelos. Graham stated he was staying at a Red Lion

[1] The same day, a Second Superseding Indictment was filed that incorporated the charges against Graham that were contained in the First Superseding Indictment. (Dkt. 269.) Graham's continued detention was ordered. (Dkt. 293.)

Response to Motion for Pretrial Release - 2
*United States v. Graham* / CR25-5166-DGE-19

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

hotel room in Everett, Washington, and arranged to pick up 1,000 fentanyl pills and three to four ounces of powder. Exhibit 1 (Search Warrant Application) at pp. 13-14.

In September 2024, Graham was seen leaving a Motel 6 by Everett Police. Officers conducted a traffic stop of Graham's vehicle for a suspended license, and when he was stopped, he climbed over to the passenger's side of the vehicle and got out of the car. Graham was arrested and found to have methamphetamine and over $4,000 in his pocket, and approximately a pound of methamphetamine, fentanyl powder, and three scales in his car. Exhibit 1 at p. 15.

In September 2025, following his indictment, agents located Graham by obtaining location information for his cellular phone via search warrant. Graham was staying at yet another hotel, an Extended Stay America in Everett. Graham was detained after entering and turning on his vehicle, where agents located six individually wrapped baggies of methamphetamine, five baggies of fentanyl powder, two baggies of fentanyl pills, and additional drug packaging, all found in a backpack in front of the driver's seat. Exhibit 1 at p. 17.

While detained, Graham yelled to another person in the parking lot, "Go to room 124!" Suspecting Graham was attempting to alert others to his arrest so they could conceal evidence in his hotel room, agents secured the room and sought a search warrant. Exhibit 1 at p. 18. Inside the room, agents found a tray with what appeared to be drug residue on it on the bathroom counter. Also in the bathroom, agents found a loaded Ruger 9mm pistol and a bullet proof vest. Additional drug packaging material was found in the top drawer of a dresser. Exhibit 2 (Report of Arrest) at p. 4.

### III.    DEFENDANT'S BACKGROUND

Graham has at least 27 criminal convictions, including his most recent conviction involving possession of a firearm and controlled substances, for which he was sentenced to 110 months' imprisonment. Supplemental Pretrial Services Report at 7. The majority of his convictions involve drug trafficking and theft offenses.

Response to Motion for Pretrial Release - 3
*United States v. Graham* / CR25-5166-DGE-19

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The Probation Office documented the issuance of over three dozen bench warrants for Graham failing to appear in court as required. The timing of the arrests indicate that many of Graham's offenses were committed while on supervision.

Graham has used controlled substances since the age of 14, and has participated in inpatient substance use disorder treatment four times, most recently in 2016, prior to his most recent prison sentence.

**IV.    LEGAL STANDARDS FOR DETENTION**

The Bail Reform Act provides that a court should detain a defendant pending trial if "no condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

The Bail Reform Act identifies four factors that a court should consider in analyzing detention issues: "(1) The nature and circumstances of the offense charged, including whether the offense . . . involves a narcotic drug; (2) the weight of the evidence . . . ; (3) the history and characteristics of the person, including . . . family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, . . . ; and . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . ." 18 U.S.C. § 3142(g). Of these factors, the weight of evidence is least important, and the statute neither requires nor permits pretrial determination of guilt. 18 U.S.C. § 3142(g).

The United States typically bears the burden of showing that a defendant poses a danger to the community by clear and convincing evidence, and it bears the burden of showing that a defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991). However, where, as here defendants are charged with one or more serious Title 21 offenses, the Bail Reform Act expressly provides:

Response to Motion for Pretrial Release - 4
*United States v. Graham* / CR25-5166-DGE-19

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*) . . . or an offense under section 924(c) . . . of title 18 of the United States Code . . .

18 U.S.C. § 3142(e). The return of an indictment is sufficient to support a finding of probable cause, triggering the rebuttable presumption. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991).

In a case where the presumption applies, Courts have found that the *defendant* bears the burden of producing evidence that he does not pose a danger to the community or risk of flight in order to rebut the presumption. *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001); *Stricklin*, 932 F.2d at 1354. The government retains the burden of persuasion. *Mercedes*, 254 F.3d at 436.

However, even if a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear. Rather, it remains a factor to be considered among those weighed by the district court. *See Stricklin*, 932 F.2d at 1354-55; *Mercedes*, 254 F.3d at 436; *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). If the presumption were to vanish once a defendant produced *some* evidence, courts would not give adequate deference to the fact that Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir.1986); *United States v. Hare*, 873 F.2d 796, 798 99 (5th Cir.1989).

Finally, it is well-settled that at a detention hearing the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and

Response to Motion for Pretrial Release - 5
*United States v. Graham* / CR25-5166-DGE-19

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

other relevant factors. *See, e.g. United States v. Salerno*, 481 U.S. 739, 743 (1987); *United States v. Winsor*, 785 F.2d 757 (9th Cir. 1986); *United States v. Cardenas*, 784 F.2d 937 (9th Cir.), *vacated as moot upon defendant's conviction*, 792 F.2d 906 (9th Cir. 1986). The statements of fact herein, which are based on the sworn wiretap and search warrant affidavits, summaries of the results of said searches and wiretap interceptions, and information obtained at the time of the defendants' arrests, is presented as such a proffer.

## V. ARGUMENT

Graham's motion to set a detention hearing should be denied. Even if a hearing is granted, he should be detained pending trial as he cannot overcome the presumption that he poses a risk of nonappearance and a danger to the community by reoffending.

First, a detention hearing may only be reopened if information exists that was not known to the movant at the time of the initial detention hearing and that has a material bearing on the issue of whether there are conditions that will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(f). Graham cites only one fact in support of his motion: the availability of a bed date with inpatient substance abuse treatment provider ABHS. However, Graham's drug addiction was known at the time of his initial appearance, so whether inpatient drug treatment is a condition that would reasonably assure the defendant's appearance the safety of the community could have been adjudicated at the time of the initial detention hearing.

Furthermore, openings with inpatient substance abuse treatment providers regularly become available, so nothing about this bed date constitutes new information justifying reopening the hearing. Indeed, if a bed date coming open were to constitute new information under § 3142(f), virtually any defendant could reopen a detention hearing based solely on the vagaries of the facility's occupancy, a fact that is entirely unrelated to the defendant or the risks the defendant presents. *Cf. United States v. Carmona-Gonzalez,* 2022 U.S. Dist. LEXIS 224468 (W.D.Wash. Dec. 13, 2022)

Response to Motion for Pretrial Release - 6
*United States v. Graham* / CR25-5166-DGE-19

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(available residence and need to care for young child not new information justifying reopening detention hearing).

Second, even if the detention hearing were to be reopened, the availability of inpatient treatment can do nothing to assure the appearance of the defendant or keep the community safe from him reoffending. Graham's substance use aggravates the risks he presents, both as to safety and nonappearance. As documented in the Pretrial Services Report and summarized above, Graham has used drugs his entire adult life, and during that time he has been convicted of dozens of crimes. This is despite Graham having participated in inpatient substance abuse treatment four times in the past, and outpatient treatment at least once. None of these experiences in drug treatment prevented him from committing new crimes or kept him from failing to appear in court. If fact, he continued to do both.

Graham cites no facts to support an argument that his release to inpatient treatment would result in a different outcome this time. Nor does he address the Probation Office's concern about a lack of a substance use disorder evaluation by providing such an evaluation that could shed light on the nature of his drug problem and the efficacy of any treatment plan. To reasonably assure his appearance and the safety of the community, any such treatment plan would have to differ greatly from the ineffective programming Graham has received in the past. But Graham presents no facts by which the Court could make such a determination.

Finally, Graham does not address the risks he will present once he is released from his temporary stay with inpatient treatment. Especially given that Graham has been through inpatient treatment before and has nevertheless continued to reoffend and fail to appear, the proposed inpatient treatment condition is inadequate to address the risks he presents. Indeed, the fact that inpatient treatment frequently fails to keep those who go through it from resuming drug use and reoffending are well-known and apparent from the many pretrial and supervised release violations the Court regularly hears.

Response to Motion for Pretrial Release - 7
*United States v. Graham* / CR25-5166-DGE-19

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

As to Graham in particular, he appears to have an especially persistent and lengthy drug abuse history as well as a transitory living situation and no reliable means of income other than drug trafficking. As explained above, Graham appears to have resided at a series of hotels from which he dealt drugs. Contrary to his assertion that no guns were found during his arrest (dkt. 268 at p. 4), agents found a loaded pistol and a bullet proof vest during their search of the hotel room Graham was leaving when he was detained, and Graham appears to have alerted others to the police presence so they could conceal the contraband in the room (supra at p. 3). In light of his circumstances, the availability of inpatient drug treatment cannot reasonably assure that Graham will pose no danger to the community, abide by the conditions of his release, appear in court, and not reoffend.

Graham additionally argues he should be released because he has children, without elaborating on why this fact addresses the risk of nonappearance and safety he presents. But hardships related to a defendant's detention are not a factor in the determination of pretrial detention under Section 3142(g). *See, e.g., Fassler v. United States,* 858 F.2d 1016, 1018 n.4 (5th Cir. 1988) (severe financial hardship not relevant to the determination whether detention warranted); *United States v. Otto*, 2024 WL 5008764 (D. Idaho Dec. 6, 2024) (pregnancy not a condition automatically entitling defendant to release). Nor could the fact that he has children assure the Court that Graham would appear and refrain from reoffending given he has repeatedly offended quite recently despite his fatherly obligations.

## VI.    CONCLUSION.

For the reasons set forth above, the government respectfully submits that defendant Graham has presented insufficient evidence to reopen the detention hearing,

//

//

and in any event is unable to overcome the presumption against detention that applies in this case. Graham's motion should therefore be denied and he should continue to be detained pending trial.

DATED this 21st day of April, 2026.

Respectfully submitted,

 /s/ Max B. Shiner
MAX B. SHINER
CRYSTAL C. CORREA
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, WA 98402
Telephone:	(253) 428-3800
E-mail:	max.shiner@usdoj.gov
	crystal.correa@usdoj.gov

I certify that this memorandum contains 2,531 words, in compliance with the Local Criminal Rules.

Response to Motion for Pretrial Release - 9
*United States v. Graham* / CR25-5166-DGE-19

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800