Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ISABEL VILLARREAL ZAPIEN,

Defendant.

NO. CR25-5166-DGE-10

UNITED STATES' SENTENCING
MEMORANDUM

Defendant ISABEL VILLARREAL ZAPIEN appears before this court for sentencing in the above-captioned case pursuant to his guilty pleas to two counts contained in a Superseding Indictment, namely: Conspiracy to Distribute Controlled Substances (Count 1), in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and Conspiracy to Commit Money Laundering (Count 48), in violation of 18 U.S.C. § 1956(h). (Dkt. 243; Plea Agreement at ¶ 3.). The United States respectfully recommends the Court impose a sentence at the low end of the guidelines imprisonment range, to be followed by a three-year term of supervised release, and a $200 special assessment. The government believes this sentence represents the appropriate sentence that is sufficient, but not greater than necessary, to fulfill the sentencing goals set forth in 18 U.S.C. § 3553(a).

//

United States' Sentencing Memorandum - 1
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## I.   BACKGROUND

**A.   Offense Conduct**

**1.   Summary of investigation**

In September of 2022, the Drug Enforcement Administration (DEA) began conducting a criminal investigation of a Mexican drug trafficking organization (DTO) operating out of Tacoma, Washington with ties to Nevada, Oregon, and California. Agents determined this DTO, led by two brothers, Rosario Abel "Joaquin" Camargo Banuelos and Francisco "Fernando" Camargo Banuelos, was responsible for distributing large quantities of methamphetamine, fentanyl, heroin, and cocaine in the Western District of Washington and elsewhere. One of the methods of transporting drugs and drug proceeds to and from Washington was the use of commercial semi-truck drivers travelling up the west coast on Interstate-5. The investigation has involved a wide variety of investigative techniques, including controlled purchases of narcotics, search warrants, and Title III authorized wiretaps on a number of target telephones.

The investigation culminated in coordinated arrests of numerous individuals on August 4, 2025, the unsealing of an indictment charging 15 individuals with conspiring with the Camargo Banuelos DTO to distribute controlled substances, and several criminal complaints for related charges. A First Superseding Indictment was returned on September 3, 2025, charging a total of 19 defendants. A Second Superseding Indictment was returned on April 14, 2026, adding two additional defendants.

**2.   Villarreal Zapien's Role as a Commercial Truck Driver Employed to Transport Drugs for the DTO**

Villarreal Zapien was a professional truck driver since 2008 who lived in Mexico and whose employment as a truck driver involved going back and forth from Mexico to the United States. (PSR ¶¶ 29, 31, 90; Plea Agreement ¶ 8.) Under the guise of legitimate commercial shipping, Villarreal Zapien used his semi-trailer truck to transport drugs (as well as legitimate cargo) from southern California to western Washington where he

United States' Sentencing Memorandum - 2
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

delivered the drugs to co-conspirators for further sale and distribution. (PSR ¶ 29; Plea Agreement ¶ 8.a.) From members of the DTO, he would pick up drug proceeds to transport to other DTO members using the same semi-truck. *Id.* Villarreal Zapien would be paid approximately $10,000 per trip to deliver large loads of narcotics and bring drug proceeds destined for Mexico back with him. (PSR ¶ 29-30; Plea Agreement ¶ 8.a.)

For example, in October 2023, Villarreal Zapien drove his semi-truck from southern California to Seattle, Washington. In his truck, he transported a load of approximately 95 pounds of methamphetamine and 41 pounds of fentanyl powder. Villarreal Zapien delivered the methamphetamine and fentanyl to a DTO worker in Seattle where he knew the drugs were intended for further distribution. (PSR ¶ 31; Plea Agreement ¶ 8.b.i.)

Again, in January 2024, Villarreal Zapien drove his semi-truck from southern California to western Washington, with a load of drugs including methamphetamine, fentanyl, heroin, and cocaine. (PSR ¶ 32; Plea Agreement ¶ 8.b.ii.) On January 28, 2024, Villarreal Zapien made two deliveries of the drugs, including delivering four packages containing over two-and-a-half pounds of methamphetamine, almost 11 kilograms of fentanyl powder, over a pound of heroin, and six kilograms of cocaine to a DTO worker. (PSR ¶ 33; Plea Agreement ¶ 8.b.ii.) In exchange, Villarreal Zapien picked up a case containing cash proceeds from the sale of drugs by the DTO. He was arrested following this transaction and found to have in his semi-truck approximately $23,060 in cash drug proceeds (consisting of his apparent fee of $10,000 located behind the passenger's seat and the remainder located in a bag), along with $1,050 in his wallet. (PSR ¶¶ 29, 34; Plea Agreement ¶ 8.b.iii.) Villarreal Zapien's receipt and transportation of the cash was intended to evade transaction reporting requirements and to conceal the nature, source, and destination of the cash proceeds. *Id.*

//

//

United States' Sentencing Memorandum - 3
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.      Procedural History**

Villarreal Zapien was indicted by a grand jury on June 25, 2025, and charged with one count of Conspiracy to Distribute Controlled Substances (Count 1), two counts of Distribution of Controlled Substances (Counts 7 and 11), and one count of Conspiracy to Commit Money Laundering. (Dkt. 1; PSR ¶ 1.) A First Superseding Indictment containing the same charges was returned on September 3, 2025. (Dkt. 121.)

Villarreal Zapien was in state custody continuously from January 28, 2024, to August 5, 2025, when he was arrested on the federal charges. (PSR ¶ 6.) Villarreal Zapien made his initial appearance on the Indictment the same day. (Dkt. 68). On February 13, 2026, Villarreal Zapien pleaded guilty to Count 1 and Count 48 of the First Superseding Indictment, charging Conspiracy to Distribute Controlled Substances and Conspiracy to Commit Money Laundering, respectively. (Dkt. 243).

## II.      BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements,

United States' Sentencing Memorandum - 4
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id*. at 50.

Based on the seriousness of Villarreal Zapien's conduct, its repeated nature, and the large quantities of dangerous drugs he was involved in distributing, the government submits a sentence at the low end of the guidelines range is appropriate and necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct.

### III.    SENTENCING GUIDELINES CALCULATIONS

**A.    Offense Level**

**1.    The Base Offense Level**

Villarreal Zapien was responsible for distributing large loads of dangerous drugs including methamphetamine, fentanyl, heroin, and cocaine. In just two trips, he moved nearly 100 pounds of methamphetamine and 65 pounds of fentanyl, along with smaller but still significant quantities of heroin and cocaine. Based on a conservative estimate of the quantity of narcotics involved in his conduct, the parties stipulated to a quantity of drugs involved in the offense of at least 90,000 kilograms of converted drug weight. (PSR ¶ 4, Plea Agreement ¶ 9.a.) This quantity would normally trigger the highest base offense level available under the Drug Quantity Table (USSG § 2D1.1(c)). However, because the parties agreed Villarreal Zapien should receive a downward adjustment for his role in the offense, the base offense level is 32 pursuant to USSG § 2D1.1(a)(5)(A) and (B)(iii). (PSR ¶ 41; Plea Agreement ¶ 41.)

//

United States' Sentencing Memorandum - 5
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## 2.    Adjustments

The agreed downward adjustment for minor role provides a two-point decrease in offense level. (PSR ¶ 45; Plea Agreement ¶ 9.b.) Villarreal Zapien receives two additional 2-point reductions (PSR ¶¶ 43, 50) but receives a two-point increase in offense level pursuant to USSG § 2S1.1(b)(2)(B) because he was convicted of money laundering under 18 U.S.C. § 1956 (PSR ¶ 49).

The government believes a 2-level increase pursuant to USSG § 3B1.3 applies, because Villarreal Zapien used a special skill to facilitate the commission of the drug and money laundering offenses.[1] The Ninth Circuit and other courts have repeatedly recognized that the ability to drive a tractor-trailer is "a skill well beyond that possessed by the general public." *United States v. Mendoza*, 78 F.3d 460, 465 (9th Cir. 1996); *see also United States v. Soto-Hernandez,* 203 F.2d 223 (9th Cir. 2000) (following *Mendoza*); *United States v. Gamez*, 81 Fed. Appx. 937 (9th Cir. 2003) (same). As explained by the Seventh Circuit, it requires "no leap of logic to conclude that the skills necessary to operate an eighteen-wheeler justify enhancement" under Section 3B1.3. *United States v. Lewis*, 41 F.3d 1209, 1214 (7th Cir. 1994). "Although ordinary driving skills may be sufficient to keep a big rig running on limited-access expressways, we seriously doubt whether the average citizen possesses the ability to guide a truck through tight spaces on city streets. Truck driving requires technical knowledge or ability that the average citizen does not possess." *Id.* The enhancement is intended to apply if a defendant has special "education, training, or licensing," and whether an average person could accomplish a task at which a person, such as an experienced commercial semi-truck driver, is adept, is does not convert the task into an ordinary or unspecialized activity; the skilled nature of the activity is determinative. *Id.*

//

---

[1] The government neglected to provide this objection to the Probation Office, and analysis of this adjustment is not contained in the PSR.

United States' Sentencing Memorandum - 6
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

Here, Villarreal Zapien, an experienced commercial semi-truck driver who had been employed in this capacity for 15 years, used that skill to transport the drugs and money using commercial trucking. This "significantly facilitated" the commission of the offense as required under Section 3B1.3. The DTO had been known to use commercial truck drivers in this capacity, and the advantage of this is clear: commercial trucks are common on the Interstate-5 corridor, and their repeated travel up and down the west coast of the United States is likely to draw little suspicion as opposed to a private vehicle. Further, these trucks allow for the concealment of drugs along with their cargo, and commercial shipping provides a regular means of transportation and a ready innocent explanation for any single trip (or stop along the way). Thus, Villarreal Zapien's skill as a commercial truck driver allowed the offense to be facilitated and concealed in a significant way, and the Section 3B1.3 adjustment should apply.

The government moves the Court to apply a three-level reduction because the defendant has demonstrated acceptance of responsibility for the offense under USSG 3E1.1(a) and (b). (PSR ¶¶ 51-52; Plea Agreement ¶ 11.) With this adjustment, Villarreal Zapien would have a total offense level of 27, notwithstanding the Probation Office's calculation of 25. (PSR ¶¶ 53.)

**B.    Defendant's Criminal History**

Villarreal Zapien has no known criminal history. (PSR ¶¶ 54-55.)

**C.    Guidelines Range**

Assuming a total offense level of 27 and criminal history category I, Villarreal Zapien's guideline sentencing range is 70-87 months. USSG Chapter 5, Part A (Sentencing Table.)

**IV.    FACTORS RELATED TO SENTENCING RECOMMENDATION**

The United States respectfully requests that the Court sentence the defendant to a term of imprisonment at the low end of the guideline sentencing range, followed by a three-year term of supervised release. The United States believes this sentence is

United States' Sentencing Memorandum - 7
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the jointly recommended sentence.

**A.     Nature, Circumstances, and Seriousness of the Offense**

Villarreal Zapien distributed large quantities of methamphetamine and fentanyl, drugs that have a devastating impact on the community. Users of these drugs frequently resort to stealing—from family members, friends, and complete strangers—to feed their addictions. No doubt, drug users are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities.

More importantly, these drugs destroy the lives of those who use them, and the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their sons, daughters, parents, or friends. While the number of people directly and indirectly impacted by the drugs Villarreal Zapien and his co-conspirators trafficked is difficult to quantify, it is undeniably extensive based on the quantities of methamphetamine and thousands of fentanyl pills that he distributed. These drugs undoubtedly fell into the hands of long-time addicts, first-time users, and everyone in between.

Especially with respect to first-time users of fentanyl, who are sometimes unaware that that the drugs they are taking contain fentanyl, their lives are put at risk with every use of these dangerous substances. This has resulted in an unprecedented epidemic of overdose deaths in the United States, and an unrelenting increase in overdose deaths in Washington state.

To illustrate, the National Center for Health Statistics, Centers for Disease Control, estimates that, despite a decrease in overdose deaths nationwide, Washington

United States' Sentencing Memorandum - 8
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

had an increase in overdose deaths of over 27% in the year ending December 2023 (while Villarreal Zapien was actively engaged in drug trafficking prior to his arrest). *See* Ken Alltucker, *Drug overdoses spiked in these states. But they have dropped elsewhere in the country.*, USA Today, May 15, 2024, available at:

https://www.usatoday.com/story/news/health/2024/05/15/drug-overdose-deaths-2023-data/73670888007/ (last accessed May 1, 2026).

The scale of the problem is massive. In January 2024, when Villarreal Zapien was arrested for his narcotics trafficking, the overdose deaths in Washington State rose to 3,501 individuals, near the peak of 3,553 deaths that occurred in March 2024, as illustrated by the graphic below, published by the CDC's National Center for Health Statistics, entitled, *Provisional Drug Overdose Death Counts*, available at:

https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm#notes (last accessed May 1, 2026):



The severity of Villarreal Zapien's crimes and the potential impact they have had on the community demonstrate seriousness of the offenses and justify a sentence at the low end of the guidelines range.

United States' Sentencing Memorandum - 9
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.      History and Characteristics of the Defendant**

Villarreal Zapien is 46 years old and has no significant heath conditions. (PSR ¶¶ 73-74.) He has no known criminal history, and has been employed for 15 years as a truck driver. (PSR ¶ 90.) He has good familial relationships and is married. (PSR ¶¶ 66-69.) His childhood resulted in few adverse experiences (PSR ¶ 80.) Yet he decided to conspire to distribute drugs to Washington, a decision that appears to have been motivated purely by money.

**C.      Similarly Situated Defendants**

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But the inquiry is not district specific. Instead, Congress's "primary goal" with section 3553(a)(6) was promoting nationwide consistency in sentencing, *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020)—that is, to avoid "unjustified difference" across judges or districts, *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). The Guidelines, which are themselves an anti-disparity formula, are the best tool for achieving that goal. *See Gall v. United States*, 552 U.S. 38, 49, 54 (2007); *Rita v. United States*, 551 U.S. 338, 354 (2007); *United States v. Osinger*, 753 F.3d 939, 949 (9th Cir. 2014).

This would be the first defendant sentenced in this criminal conspiracy. There do not appear to be significant mitigating factors apart from those that are accounted for by the guidelines (such as lack of criminal history). Thus, the government's recommendation of a sentence at the low end of the guidelines range would result in a sentence that assures consistency and avoids disparities.

//

//

United States' Sentencing Memorandum - 10
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## V.    CONCLUSION

For all the reasons set forth above, the government respectfully recommends the Court impose a custodial sentence at the low end of the guidelines sentencing range as calculated by the Court, to be followed by a three-year term of supervised release, and a $200 special assessment.

DATED: May 1, 2026.

Respectfully submitted,

/s/ Max B. Shiner
MAX B. SHINER
CRYSTAL C. CORREA
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3822
Fax: 253-428-3826
Email: max.shiner@usdoj.gov

United States' Sentencing Memorandum - 11
*United States v. Villarreal Zapien*, CR25-5166-DGE-10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800