Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LEVI FRANK GRAHAM,<br>Defendant. | NO. CR25-5166-DGE-19<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Defendant LEVI FRANK GRAHAM appears before this court for sentencing in the above-captioned case pursuant to his guilty plea to a lesser-included offense contained in Count 1 of the Second Superseding Indictment, namely: Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Plea Agreement (Dkt. 2; Plea Agreement at ¶ 3.). The United States respectfully recommends the Court impose a below-guidelines sentence of 180 months, to be followed by a four-year term of supervised release, and a $100 special assessment. The government believes this sentence represents the appropriate sentence that is sufficient, but not greater than necessary, to fulfill the sentencing goals set forth in 18 U.S.C. § 3553(a).

//

//



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# I. BACKGROUND

## A. Offense Conduct

### 1. Summary of investigation

In September of 2022, the Drug Enforcement Administration (DEA) began conducting a criminal investigation of a Mexican drug trafficking organization (DTO) operating out of Tacoma, Washington with ties to Nevada, Oregon, and California. Agents determined this DTO, led by two brothers, Rosario Abel "Joaquin" Camargo Banuelos and Francisco "Fernando" Camargo Banuelos, was responsible for distributing large quantities of methamphetamine, fentanyl, heroin, and cocaine in the Western District of Washington and elsewhere. The investigation has involved a wide variety of investigative techniques, including controlled purchases of narcotics, search warrants, and Title III authorized wiretaps on a number of target telephones.

The conspiracy involved the Camargo Banuelos brothers acting as sources of supply of narcotics. These co-defendants and others working with them would take orders for narcotics from drug redistributors operating in Western Washington, like defendant GRAHAM. The sources of supply would dispatch other co-conspirators to deliver the narcotics at locations in Western Washington, collecting payment from the redistributors like GRAHAM. Plea Agreement at ¶ 8.a.

GRAHAM's telephone calls and text messages with Francisco Camargo Banuelos in mid-2024 were intercepted pursuant to a court-authorized wiretap order obtained by the Drug Enforcement Administration. These calls detailed GRAHAM's purchases of narcotics for redistribution. For example, on June 20, 2024, GRAHAM asked to set up a meeting for GRAHAM to buy 1,000 fentanyl pills and three to four ounces of fentanyl powder. Presentence Report (PSR) at ¶ 31; Plea Agreement at ¶ 8.b.i. When Camargo Banuelos said he only had pills available, GRAHAM agreed to buy 2,000 fentanyl pills. GRAHAM met with to take delivery of those pills.

//



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

GRAHAM again communicated with Camargo Banuelos about purchasing a pound of methamphetamine and fentanyl pills and was quoted a price of $1,000 per pound. GRAHAM agreed to purchase the pound along with 2,000 fentanyl pills and sent the location to send the courier to meet him. PSR at ¶ 31; Plea Agreement at ¶ 8.b.ii.

From June 28, 2024, to June 30, 2024, GRAHAM asked for fentany1 powder, Camargo Banuelos said he only had methamphetamine and fentanyl pills, and GRAHAM said he needed fentanyl powder "really bad" because he was losing money and continued to ask about its availability. PSR at ¶ 32; Plea Agreement at ¶ 8.b.iii.

On July 3, 2024, GRAHAM asked for a pound of methamphetamine, and Camargo Banuelos agreed to have it delivered to GRAHAM's location in Everett, Washington, and provided the vehicle description of the courier delivering the methamphetamine. GRAHAM then met with a courier at the agreed location to take delivery of the methamphetamine. PSR at ¶ 33; Plea Agreement at ¶ 8.b.iv.

On July 12, 2024, Camargo Banuelos told GRAHAM over the phone that he would receive fentany1 powder and pills later that day and agreed to let GRAHAM know when they arrived, and GRAHAM said he would be ready for him. PSR at ¶ 34; Plea Agreement at ¶ 8.b.v.

GRAHAM remained in phone contact with Camargo Banuelos periodically including in the week leading up to September 11, 2024. PSR at ¶ 34; Plea Agreement at ¶ 8.b.vi. On that date, GRAHAM was at a motel in Everett, where he entered a vehicle and drove out of the parking lot. Police stopped GRAHAM's car, but he climbed to the passenger's seat and got out of the car before they could detain him. GRAHAM was carrying $4,340 in cash drug proceeds, and inside the car, he had a bag containing 486.3 grams (about a pound) of methamphetamine and a bag containing about 24 grams of fentanyl powder, all of which he intended to distribute. GRAHAM also three digital scales and hundreds of plastic baggies for the purpose of distributing drugs. PSR at ¶ 35; Plea Agreement at ¶ 8.b.vii.



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

GRAHAM was arrested by local police and later released, but he remained in telephonic contact with Camargo Banuelos through August 2025. PSR at ¶ 36; Plea Agreement at ¶ 8.b.viii.

The investigation culminated in coordinated arrests of numerous individuals on August 4, 2025, the unsealing of an indictment charging 15 individuals with conspiring with the Camargo Banuelos DTO to distribute controlled substances, and several criminal complaints for related charges. A First Superseding Indictment was returned on September 3, 2025, charging a total of 19 defendants, and adding GRAHAM. A Second Superseding Indictment was returned on April 14, 2026, adding two additional defendants.

On September 3, 2025, DEA agents located GRAHAM at a hotel in Everett, Washington, and went there to arrest him on the charges in this case. Agents saw GRAHAM enter his vehicle before detaining him. Inside the vehicle was a digital scale with white residue on it, in plain view. Also inside the vehicle was a backpack that was found to contain several plastic baggies containing approximately 166 grams of fentanyl powder, six plastic baggies containing approximately 126 grams of methamphetamine, and two plastic baggies containing approximately 57.6 grams of fentanyl pills. PSR at ¶ 37; Exhibit 1.

While agents searched the vehicle, GRAHAM yelled out to people in the parking lot, "Go to Room 124!" Believing GRAHAM was attempting to have someone go to his hotel room to destroy or remove evidence, agents went to the room and secured it, after having GRAHAM's pregnant wife and her child step out. Agents obtained a search warrant for the hotel room, where they found a 9mm caliber pistol loaded with seven rounds of ammunition on a shelf in the bathroom, along with a bullet-proof vest. Also in the bathroom was a tray with apparent drug residue on it, and additional drug packaging and a fentanyl pill were found in a dresser and nightstand. PSR at ¶ 37; Exhibit 1.

//



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B. Procedural History**

GRAHAM was indicted by a grand jury on September 3, 2025, and charged with one count of Conspiracy to Distribute Controlled Substances (Count 1), and one count of Possession of a Controlled Substance with Intent to Distribute (Count 37). Dkt. 121; PSR ¶ 1. A Second Superseding Indictment containing the same charges was returned on April 14, 2026. Dkt. 269; PSR ¶ 2.

GRAHAM was arrested on the federal charges on September 3, 2025. Dkt 151; PSR ¶ 6. He made his initial appearance on the Indictment the next day. Dkt. 169; PSR ¶ 6. On June 9, 2026, GRAHAM pleaded guilty to a lesser-included offense to Count 1 of the Second Superseding Indictment, charging Conspiracy to Distribute Controlled Substances. (Dkt. 350, 351; PSR ¶ 3).

## II. BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id*. at 50.

Based on the seriousness of GRAHAM's conduct, the large quantities of dangerous drugs he was involved in distributing, the length and extent of his involvement in the present criminal activity, and his lengthy criminal history including a prior 10-year sentence for multiple drug trafficking offenses, the government submits a sentence of 180 months' imprisonment is appropriate and necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct.

## III. SENTENCING GUIDELINES CALCULATIONS

### A. Offense Level

#### 1. The Base Offense Level

GRAHAM was responsible for distributing large amounts of methamphetamine, fentanyl powder, and fentanyl pills. He repeatedly procured pound quantities of methamphetamine and thousands of fentanyl pills, along with significant quantities of fentanyl powder, in order to sell them for profit. Based on a conservative estimate of the quantity of narcotics involved in his conduct, the parties stipulated to a quantity of drugs involved in the offense of at least 10,000 kilograms of converted drug weight. PSR ¶ 4, Plea Agreement ¶ 9.a. This quantity triggers base offense level 34 under the Drug Quantity Table. PSR ¶ 43.

#### 2. Specific Offense Characteristic

As the Probation Office found, an increase of two levels is applied pursuant to USSG § 2D1.1(b)(1) because GRAHAM possessed a firearm. GRAHAM possessed the



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

9mm handgun in the hotel room where he was staying at the time of his arrest. He was seen exiting the hotel and entered a vehicle where he was found with fentanyl, methamphetamine, fentanyl pills, and a digital scale. When police arrested him, he attempted to alert others to go to his room in an apparent attempt to secrete other evidence from discovery. The officers searched the room, and found a tray with drug residue, a stray fentanyl pill, drug packaging, ballistic body armor, and the other tool of the drug trade, a loaded semi-automatic handgun. This drug trafficking conduct is accounted for under the guidelines because it is part of "the same course of conduct or common scheme or plan as the offense of conviction," that is, the drug trafficking conspiracy in which GRAHAM had been engaged for years. USSG § 1B1.3(a)(2).

The firearm enhancement does not require that the firearm was possessed with the intent to further the drug trafficking. It is merely intended to reflect "the increased danger of violence when drug traffickers possess weapons." USSG § 2D1.1 cmt. n. 11(A). For that reason, the enhancement should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* Under the circumstances here, it is clear that GRAHAM was using the hotel room as a base for his drug trafficking, and his possession of the gun along with the bullet-proof vest in the bathroom where the drugs had evidently been stored requires the application of the enhancement, because it is not "clearly improbable" that the weapon was connected with the drug dealing.

**3. Adjustment for Acceptance of Responsibility**

The government moves the Court to apply a three-level reduction because the defendant has demonstrated acceptance of responsibility for the offense under USSG 3E1.1(a) and (b). PSR ¶¶ 50-51; Plea Agreement ¶ 10. With this adjustment, GRAHAM has a total offense level of 33. PSR ¶¶ 52.

//

//



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B. Defendant's Criminal History**

GRAHAM has a lengthy criminal history that began 22 years ago when GRAHAM was age 18 and extends to the present almost uninterrupted (except by custodial sentences). GRAHAM has a total of 26 criminal convictions, totaling 21 criminal history points.[1] PSR ¶¶ 54-79. GRAHAM is in criminal history category VI. PSR ¶ 81.

**C. Guidelines Range**

Based on a total offense level of 33 and criminal history category VI, GRAHAM's guideline sentencing range is 235-293 months. PSR ¶ 132; USSG Chapter 5, Part A (Sentencing Table.)

## IV. FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence GRAHAM to a 180-month term of imprisonment, followed by a four-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," the "history and characteristics of the defendant," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to afford adequate deterrence," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the jointly recommended sentence.

**A. Nature, Circumstances, and Seriousness of the Offense**

GRAHAM distributed large quantities of methamphetamine and fentanyl, drugs that have a devastating impact on the community. Users of these drugs frequently resort to stealing—from family members, friends, and complete strangers—to feed their

---

[1] The Presentence Report assessed an additional three points for GRAHAM's conviction in Alaska based on a 2005 arrest (PSR ¶ 56). As of this writing, the parties are seeking clarification as to whether this sentence occurred within 15 years of the instant offense and thus falls within the applicable time period to score criminal history points. In either case, GRAHAM's criminal history score places him far above the threshold for criminal history category VI.



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

addictions. No doubt, drug users are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities.

More importantly, these drugs destroy the lives of those who use them, and the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their sons, daughters, parents, or friends. While the number of people directly and indirectly impacted by the drugs GRAHAM trafficked is difficult to quantify, it is undeniably extensive based on the quantities of methamphetamine and thousands of fentanyl pills that he distributed and the length of time in which he supported himself through this deadly trade. These drugs undoubtedly fell into the hands of long-time addicts, first-time users, and everyone in between.

Especially with respect to first-time users of fentanyl, who are sometimes unaware that that the drugs they are taking contain fentanyl, their lives are put at risk with every use of these dangerous substances. This has resulted in an unprecedented epidemic of overdose deaths in the United States, and an unrelenting increase in overdose deaths in Washington state.

To illustrate, the National Center for Health Statistics, Centers for Disease Control, estimates that, despite a decrease in overdose deaths nationwide, Washington had an increase in overdose deaths of over 27% in the year ending December 2023 (while Villarreal Zapien was actively engaged in drug trafficking prior to his arrest). *See* Ken Alltucker, *Drug overdoses spiked in these states. But they have dropped elsewhere in the country.*, USA Today, May 15, 2024, available at: https://www.usatoday.com/story/news/health/2024/05/15/drug-overdose-deaths-2023-data/73670888007/ (last accessed September 4, 2026).

The scale of the problem is massive. In the year ending September 2025, when GRAHAM was arrested for his narcotics trafficking, the overdose deaths in Washington State rose to 3,159 individuals, near the peak of 3,553 deaths that occurred in March 2024, as illustrated by the graphic below, published by the CDC's National Center for



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Health Statistics, entitled, *Provisional Drug Overdose Death Counts*, available at: https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm#notes (last accessed September 4, 2026):

Figure 1a. 12 Month-ending Provisional Counts of Drug Overdose Deaths: Washington




The severity of GRAHAM's crimes and the potential impact they have had on the community demonstrate seriousness of the offenses and justify a sentence of 180 months, a sentence far below the guidelines range.

**B. History and Characteristics of the Defendant**

GRAHAM is 40 years old. PSR ¶ 91. He has seven children with at least five different women, but several are in the custody of Child Protective Services. PSR ¶¶ 98-99. GRAHAM has only briefly worked in legitimate employment (PSR ¶¶ 127-128) and was expelled from school in the ninth grade, earning a GED while in prison (PSR ¶ 123-124). He has used controlled substances since his teenage years. PSR ¶¶ 115-122.

GRAHAM has been relentlessly engaged in criminal activity since the age of 18. With 26 criminal convictions in the past 22 years, GRAHAM's criminal activity has gone inadequately deterred for decades. In March 2017, GRAHAM received a 105-month



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

sentence consolidating six separate drug-trafficking related cases. PSR ¶¶ 73-78. The next March, GRAHAM was convicted of a seventh drug-related case, this one involving his unlawful possession of a firearm. He received a 120-month sentence (later reduced to 110 months). PSR ¶ 79.

**C. The Need to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Further Crimes**

The sentence must reflect the seriousness of the offense, appropriately promote respect for the law, and protect the community. The sentence must also provide needed deterrence for defendant and meet the goal of general deterrence, sending the appropriate message to those who would engage in drug dealing on behalf of Mexican drug trafficking organizations, particularly when conducted while armed. The possession of firearms by GRAHAM, both in the present case and in his most recent prior conviction, is illustrative and a cause of a harsh reality: the seriousness of drug trafficking is aggravated by the violence it frequently involves, which necessitates drug dealers have access to firearms as a tool of their trade.

None of the above-described convictions or sentences has stopped GRAHAM from engaging in continued drug trafficking. In this case, GRAHAM engaged in drug trafficking over the course of at least 15 months while the investigation went on, re-arming himself with another firearm and body armor, and bringing his drug trafficking base of operations to a hotel in Everett where it endangered the residents and the broader community.

The principle of graduated sanctions requires a sentence of greater length than GRAHAM has thus far received in order to protect the public from further crimes by GRAHAM. A 180-month sentence is necessary and appropriate to meet the sentencing goal of deterrence, to promote respect for the law, and to protect the public from further crimes by the defendant.

//



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**D. Similarly Situated Defendants**

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But the inquiry is not district specific. Instead, Congress's "primary goal" with section 3553(a)(6) was promoting nationwide consistency in sentencing, *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020)—that is, to avoid "unjustified difference" across judges or districts, *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). The Guidelines, which are themselves an anti-disparity formula, are the best tool for achieving that goal. *See Gall v. United States*, 552 U.S. 38, 49, 54 (2007); *Rita v. United States*, 551 U.S. 338, 354 (2007); *United States v. Osinger*, 753 F.3d 939, 949 (9th Cir. 2014).

There do not appear to be significant mitigating factors in GRAHAM's case. The only co-defendant sentenced in this case thus far is not comparable to GRAHAM in that he had no prior criminal history and acted only as a courier. Despite the government's recommendation being below that called for by the sentencing guidelines, the 180-month sentence avoid gross disparities in sentencing for similar criminal conduct.

## V. CONCLUSION

For all the reasons set forth above, the government respectfully recommends the Court impose a sentence of 180 months' imprisonment, to be followed by a four-year term of supervised release, and a $100 special assessment.

DATED: September 4, 2026.

Respectfully submitted,

*/s/ Max B. Shiner*
MAX B. SHINER
CRYSTAL C. CORREA
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3822
Email: max.shiner@usdoj.gov